# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| J.H. PARKER CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-183C |
| | ) | |
| THE UNITED STATES, | ) | (Chief Judge Damich) |
| | ) | |
| Defendant. | ) | |

## JOINT PRELIMINARY STATUS REPORT

Pursuant to Appendix A of the Rules of the United States Court of Federal Claims ("RCFC") and the Court's Special Procedures Order, plaintiff, J.H. Parker Construction Co., Inc. ("Parker"), and defendant, the United States, hereby submit this Joint Preliminary Status Report ("JPSR"):

**a. Does the Court have jurisdiction over the action?**

Parker seeks damages for breach of contract. The parties are not presently aware of anything that would prohibit the Court from exercising jurisdiction over matters alleged in the complaint pursuant to section 609 of the Contract Disputes Act, 41 U.S.C. § 601, et seq. ("CDA"), and the Tucker Act, 28 U.S.C. § 1491(a).

**b. Should the case be consolidated with any other case and, if so, why?**

No.

**c. Should trial of liability and damages be bifurcated and, if so, why?**

The parties agree that bifurcation of the proceedings is not warranted.

**d. Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal, and if so why?**

The parties agree that there is no basis for deferring proceedings in this case. The parties further agree that there is no basis for transferring or remanding this case to another tribunal.

The only related case in this or any other tribunal is J.H. Parker Construction Company v. United States, No. 04-471C (Fed. Cl.), which involved the same contract. The related case was dismissed on January 31, 2007, pursuant to a joint stipulation of dismissal.

**e. In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?**

The parties agree that no remand or suspension will be sought.

**f. Will additional parties be joined?**

The parties agree that no additional parties will be joined.

**g. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c) or 56 and, if so, a schedule for the intended filing?**

Parker intends to file a motion for partial summary judgment establishing that the government's design of certain aspects of the dam was defective and that no genuine issue of material fact exists concerning this issue. Parker anticipates that its motion pursuant to RCFC 56 can be filed no later than January 15, 2008.

At this time, the United States does not anticipate filing any dispositive motion.

**h. What are the relevant factual and legal issues?**

**Plaintiff's Statement**:

This action arises out of a contract between the United States and Parker, for construction of an earthen embankment (dam) and a reinforced concrete baffle chute grade control structure, as well as other appurtenant features as specified by the Department of Agriculture, Natural Resources Conservation Services ("NRCS"), on Porter Creek in the Homochitto National Forest,

located in Franklin County, Mississippi ("Contract"). Under the Contract, the NRCS provided Parker with the Contract's “design specifications,” setting forth the specific dimensions, materials, manner of performance, and other requirements for Project construction.

Included in the specifications provided by the NRCS, the Contract Documents specified placement of a layer of Concrete Cellular Blocks ("CCB") on the upstream slope of the dam embankment. After Parker first commenced installation of the CCB system, the work was suspended due to heavy rainfall. After the rainfall, Parker and NRCS representatives met at the site to review the damage due to the rains and both parties found that the CCB system had completely failed. Initially, NRCS denied that its CCB design was defective; however, the NRCS Contracting Officer's Representative and NRCS inspectors directed certain design changes in the field. Following further heavy rains, the CCB system failed again and blowouts were found under the CCB layer.

During performance, the NRCS issued Contract Modification No. 4 requiring placement of topsoil over the entire CCB system and directing other design changes. Compliance with Modification No. 4 required placement of additional topsoil that was not available in the NRCS designated borrow areas. Modification No. 4 did not identify the area from where Parker could obtain the additional topsoil required to execute the changes directed by NRCS. When NRCS provided the location from which Parker was to obtain topsoil for the changed work, the NRCS-designated borrow area proved inaccessible for the Contract's topsoil needs. As a result of the government's actions, Plaintiff incurred additional costs and delays.

The contract further required Plaintiff to construct a dam embankment and the Contract specifications represented that the Project design accounted for anticipated settlement. The actual settlement experienced during construction; however, was even greater than the designers'

estimate. As a result of the excessive settlement, Parker was required to increase the amount of fill material necessary to stabilize the embankment. As a result, Plaintiff incurred additional costs and delays. Moreover, contrary to the NRCS specification, the site lacked sufficient soil composition to construct the dam as specified. Parker, therefore, incurred additional costs to perform the work.

The NRCS Contract specified the pollution and erosion control activities that Parker was required to undertake; however, those erosion control techniques were ineffective. As a result, Plaintiff incurred additional costs and delays.

After performance of the contract, NRCS personnel acknowledged that the design provided to Plaintiff was defective. Despite acknowledging defects in their design specifications, NRCS failed to cooperate with Plaintiff to fix the defective design. Moreover, NRCS personnel failed to cooperate with Plaintiff or to act in good faith by ignoring Plaintiff's certified claim, indicating that the Contracting Officer would issue a timely decision, and then issuing no decision on Plaintiff's claim.

<u>Legal Issues</u>:

1. Whether the NRCS's specifications with regard to the CCB system were defective and, if so, whether Plaintiff is entitled to additional compensation?

2. Whether the NRCS's specifications with regard to the Dam Embankment were defective and whether Plaintiff encountered differing site conditions entitling it to additional compensation?

3. Whether the NRCS's specifications were defective with regard to anticipated settlement and erosion control methods, and if so, whether Plaintiff is entitled to compensation as a result of the defective specifications?

4. Whether the Plaintiff is entitled to additional compensation for delays on the Project due to unusually severe weather where NRCS forced the Plaintiff into these severe weather periods?

5. Whether the government breached its duty to cooperate and duty of good faith and fair dealing with Plaintiff during performance of the Contract and in the handling of Plaintiff's Certified Claim?

Factual Issues:

The aforementioned legal issues involve a mixture of fact and law. More specific factual issues involve the following:

1. Whether soils conditions differed from those represented in the contract with regard to the types, locations, and quantities of soil.

2. Whether the government's design of the project was viable related to:

a. The retrieval and placement of soils,

b. The wave protection system,

c. Soil erosion protection,

3. Identification of the Plaintiff's critical path construction schedule.

4. Identification of the number and dates of severe weather days.

5. The extent of Plaintiff's damages stemming from the government's actions.

Preliminary Areas of Expert Testimony:

Although not required by the Court's Special Procedures Order, Plaintiff offers the following preliminary description of areas in which it anticipates providing expert testimony:

1. Design issues, including but not limited to:

a. Design of the wave protection system;

b. Design of the embankment;

c. The specified retrieval and placement of soils;

2. The extent to which the types and locations of soils differed from those specified by the government.

3. Plaintiff's schedule and the impacts thereto.

4. Plaintiff's damages and the methodology for proving such damages.

**Defendant's Statement:**

With all due respect, the statement of law and facts by Parker is not helpful. Parker's presentation provides a poor framework for understanding the nature of the case, the needs for discovery, and the need for pretrial development of the issues. Insignificant issues are highlighted by Parker in its statement of law and facts, crucial issues are ignored.

In general, the period of contract performance can be divided into two sections. Prior to October 2002, Parker performed substantial work. In October 2002, a controversy developed concerning cellular blocks. From October 2002 until April 2003 (when the contract was terminated for default), Parker did almost no work

In the complaint, and in Parker's statement of law and facts, Parker emphasizes the cellular block issue, but the cellular block issue is largely irrelevant to its claims for "out of scope" work because Parker performed almost no construction tasks from October 2002 to April 2003.

The cellular block issue is the insignificant issue most strongly highlighted in Parker's statement of law and facts.

The most crucial issue ignored by Parker's presentation is Parker's use of a "total cost" approach to proving damages.

First, to the extent that Parker's statement of law and facts implies that Parker’s alleged loss of $3 million flowed from the cellular block issue, Parker's presentation is misleading. The cellular block controversy occurred after the significant construction costs had been incurred.

Second, Parker’s selection of the “total cost” methodology obscures the fact that Parker has not yet offered any specific allegation regarding how various alleged “breaches” caused specific costs outside the scope of the contract prior to October 2002. Thus, Parker’s pertinent allegations remain a black box that can be clarified, if at all, only through substantial pretrial development.

The last point – the fact that no reasoned allegation of direct causation has yet been disclosed by Parker -- is very significant for the purposes of this JPSR because it relates directly to the most important decision now before the Court: what schedule should be set in this case?

For the convenience of the Court, we respectfully offer a bird’s eye view of the case for context. Next, we explain why we do not expect the allegations now before the Court to be the allegations presented at trial. Finally, we explain why a reasonable time for pretrial development of the case is needed in the interests of justice and judicial economy.

This Case Concerns Events Prior To October 2002

Parker entered into a contract in August 2002 to build a dam in a portion of Mississippi where rainy periods are expected. The contract contained special provisions providing for time extensions to compensate for rainy periods, and providing for certain site management practices to mitigate the effects of rain. In short, both parties expected rain during contract performance.

Parker was an experienced contractor, but had no experience with a project as large as the dam project. By the end of September 2002, Parker’s submittals to the United States indicated that its work was 90 percent complete, and Parker seemed to be on schedule. However, it

appears that Parker's costs were much higher than it had anticipated, and Parker appears to have been upon the verge of bankruptcy by October 2002.

In October 2002, heavy rains caused a portion of the dam to wash out. The United States blamed Parker for poor workmanship and poor site management practices. Parker blamed the United States for poor design. In January 2003, the United States revised the design, but Parker never resumed work. The United States suspected, among other things, that Parker was refusing to work because Parker was essentially insolvent. Parker asserted, among other things, that it was simply too wet to work. In April 2003, the contracting officer terminated the contract for default because Parker was refusing to work.

The propriety of the termination for default was the sole subject of the related case previously considered by this Court.

In that previous case, it was the burden of the United States to prove that the work site was dry enough for Parker to work from January 2003 until April 2003, and that Parker unreasonably refused to work. The case was settled, and the termination for default was converted to a termination for convenience.

In the complaint, and in Parker's statement of law and facts, Parker relies heavily upon allegations concerning events which occurred after September 2002, i.e., Parker's story about an alleged defect in the design of the cellular block structure near the top of the dam. However, even if this story were true, it could only be a very, very minor part of this case because Parker did almost no work after September 2002.

The central focus of this case should be whether Parker can prove one or more breaches of contract by the United States that directly caused specific damages prior to October 2002.

The Vague Allegations In The Complaint Must Be Replaced Before Trial

With all due respect, Parker has made no effort to present any coherent explanation concerning how any breach by the United States prior to October 2002 resulted in $3 million in damages to Parker. Even assuming for the sake of argument that the United States did breach the contract in some way prior to October 2002, Parker has made no effort to explain how the breach resulted in costs outside the scope of the contract.

Instead, Parker has relied upon a "total cost" methodology for calculating damages.

This methodology is fundamentally unfair because it is a transparent attempt to shift the burden of proof from the plaintiff to the United States. Rather than prove how a breach caused damages, the plaintiff alleges that it lost some amount of money, alleges that the United States did something inconsistent with the contract, and then implies that the United States must bear the burden of proving that it did not cause Parker's loss.

"Total cost" proof of damages is disfavored because it lumps together the consequences of the contractor's mistakes, and the consequences of risks accepted by the contractor, with the consequence of a breach by the Government. Therefore, this methodology may only be employed as a last resort. E.g., Raytheon Co. v. White, 305 F.3d 1354, 1365-66 (Fed. Cir. 2002).

Any failure to meet the strict conditions for employing a "total cost" approach results in a total failure of proof, and no recovery. For example, if the United States demonstrates that Parker or its subcontractors are responsible for any additional costs, then its damages presentation fails. Servidone Construction Corporation v. United States, 931 F.2d 860, 861-62 (Fed. Cir. 1991) (total cost method assumes that all costs are reasonable and that no portion of the loss was caused by the contractor) (total cost method should be used only as a "last resort");

Boyajian v. United States, 191 Ct. Cl. at 242, 423 F.2d at 1235-36 (total cost method is disfavored because it fails to distinguish between costs resulting from Government breach and other costs) (holding that complaint should be dismissed regardless of liability because no discrete damages were proved); Wunderlich Contracting Co. v. United States, 173 Ct. Cl. 180, 192-93, 199-200, 351 F.2d 956, 964, 968 (1965) (total cost method rejected) (no recovery because contractor failed to segregate damages caused by the United States from other causes of loss).

In this case, Parker's total cost presentation must fail because Parker contributed to its own problems in many ways. For example, Parker had difficulty managing its earth-moving subcontractors. During performance of the contract, Parker made use of earth-moving subcontractors on a scale that it had never done before – and so had never before managed. The results were poor. In fact, Parker became embroiled in litigation with its subcontractors – each contending that the other was at fault for mistakes and additional costs.

At trial in this case, it does not matter whether Parker or its subcontractors were at fault. If either Parker or its subcontractors were at fault, and additional costs were incurred, then such costs are the responsibility of Parker. In either event, Parker's "total cost" proof must fail, as a matter of law, and Parker may recover nothing.

In our view, it is likely that Parker will abandon the total cost methodology following certain discovery and, perhaps, following certain limited motion practice.

The Need For Pretrial Activities

The discovery needed for this case is quite different from the discovery necessary from the previous case. The earlier case focused upon events after October 2002. This case focuses upon events prior to October 2002.

For example, Parker's failure to successfully manage its earth-moving subcontractors was largely irrelevant to the material issues in the earlier case because this failure occurred prior to October 2002. These events require much closer scrutiny in this case.

In addition to basic fact discovery, we need to discover what allegations concerning causation that Parker is likely to make at trial. We will send contention interrogatories, and perhaps notice a deposition pursuant to RCFC 30(b)(6).

Our effort to discover Parker's contentions is likely to be made more difficult by Parker's reliance upon a bevy of experts. Parker has preliminarily decided to present at trial experts in dam design, soil characteristics, schedule, and damages. No reports from any such testifying experts were previously presented in Parker's claim.

For example, Parker has made a vague allegation that the quality of the soil encountered at the dam site was a differing site condition, and that as a result of this differing site condition, Parker lost some indeterminate amount of money. We do not have any substantial explanation for why Parker contends that the soils were a differing site condition, and we do not expect to receive one until Parker's expert report is submitted.

In short, the causal narratives that Parker must present at trial (in order to have any reasonable chance to meet its burden of proof) are currently a black box. Time will be needed to discover Parker's specific allegations, and to discover the facts relevant to those allegations.

Even assuming that Parker does disclose its specific contentions, time will be needed to probe those contentions. Part of that inquiry will involve testing the reliability of Parker's financial records and calculations. Accordingly, the United States intends to seek audits by the Defense Contract Audit Agency of Parker's accounting system and record-keeping practices, generally, and of Parker's overhead rates. Once funding for the audit is approved, the audit may begin.

The length of time needed for the audit will depend, in part, upon the cooperation provided by Parker.

Factual Issues:

1. What work, if any, did Parker perform that was outside the scope of contract requirements?
2. What direct costs were incurred for work outside the scope of contract requirements?
3. What were Parker's overhead rates?
4. Assuming for the sake of argument that Parker seeks to employ a "total cost" methodology, was Parker's bid reasonable?
5. Assuming for the sake of argument that Parker seeks to employ a "total cost" methodology, were all the actual costs incurred reasonable?
6. Assuming for the sake of argument that Parker seeks to employ a "total cost" methodology, was it impossible for Parker to segregate its costs during contract performance?
7. Assuming for the sake of argument that Parker seeks to employ a "total cost" methodology, were all the costs of contract performance solely caused by Government actions?

Legal Issues:

1. Did the United States breach the contract?
2. May a "total cost" methodology for proving damages be employed in this case?

**i. What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

Plaintiff believes that settlement may be an appropriate vehicle by which to resolve this matter, and Plaintiff will make every effort to reach an amicable resolution, should such a course of action be deemed appropriate. At this time, Plaintiff does not believe that alternative dispute resolution ("ADR") proceedings will be useful in facilitating settlement. Plaintiff, however, will remain open to the possibility of ADR proceedings as the case progresses.

The United States believes that settlement is unlikely in the near future because Parker has offered no plausible justification for the vast bulk of the damages sought. There may be an ability to reach compromise upon certain specific issues. The United States agrees that ADR proceedings are unlikely to be helpful at this time.

**j. Proposed Scheduling Plan:**

The parties are unable to agree upon a proposed scheduling plan and, therefore, submit separate proposed schedules. The separate dates proposed are presented side-by-side, for the convenience of the Court:

**<u>Proposed Scheduling Plan</u>:**

i. Requested Place of Trial:

<u>Plaintiff</u>:

Parker requests that trial occur in Mississippi, where all relevant fact witnesses and documents reside, and where the project is located.

<u>Defendant</u>:

The United States requests that trial occur in Washington, D.C.

The Court, the contracting officer, the many counsel, and the many support staff to the Court and counsel, all reside in Washington, D.C. Moreover, any inconvenience to such people

is likely to extend to the duration of the trial. Any inconvenience to the witnesses from Mississippi can be effectively limited to a single day of testimony, or perhaps the day of testimony and one previous day.

Anticipated duration of trial:

Plaintiff:

Parker anticipates 1 week of trial.

Defendant:

The United States considers Parker's estimate to be unrealistic at this time -- although the issues may be narrowed by the time of trial.

For example, the United States notes that Parker anticipates the testimony of four experts. It is difficult to imagine that the direct examination and cross examination of these expert witnesses alone will be accomplished in less than four trial days. At this time, the United States anticipates at least two weeks of trial.

Earliest date of trial:

Plaintiff:

In light of the vast amount of discovery already conducted in the previous matter, Case No. 04-471C (Fed. Cl.), concerning Plaintiff's termination, Plaintiff suggests that trial begin on March 1, 2008.

Defendant:

The United States strongly objects to a trial date of March 1, 2008.

The United States agrees that a large volume of documents were gathered during the earlier, related case, but the United States disagrees that the relevant discovery was conducted during the earlier case. The focus of the two cases is entirely different. For example, the

relevant time frames and relevant chronologies are different. For another example, there was no claim for damages in the previous case.

Parker's suggested trial date does not provide time to determine the specific allegations likely to be presented by Parker at trial, to determine the expert contentions to be offered by Parker, to discover relevant facts, to exchange summary exhibits and supporting documents, to file this Court's special and detailed pre-trial submissions, to file motions in limine to narrow the scope of the disputes at trial, and to complete other necessary tasks.

The United States suggests that trial in July 2009 would require an extremely aggressive schedule (in light of the many tasks to be accomplished) and would require unwavering cooperation from Parker.

ii. Date for joinder of additional party:

Not applicable. No date needed.

iii. Does either party anticipate filing a dispositive motion?

Yes, Plaintiff anticipates filing a motion for partial summary judgment.

1. Date by which the motion will be filed?

Plaintiff suggests January 15, 2008.

2. The legal theory in support of such motion?

Plaintiff expects to file a motion for partial summary judgment establishing that the government's design of certain aspects of the dam was defective and that no genuine issue of material fact exists concerning this issue. Plaintiff further anticipates being able to demonstrate that the government improperly calculated Plaintiff's entitlement to weather delays as a matter of law.

3. Does either party desire that expert discovery precede the motion, if so the grounds therefore?

Plaintiff contends that expert discovery may further clarify its entitlement to partial summary judgment on design and weather delay issues.

The United States agrees that expert discovery regarding Parker's cellular block design defect claim will be needed. The United States understands that Parker does not intend to address damages in its motion for summary judgment regarding its cellular block design defect claim. If Parker were to address damages, then some further discovery might be required.

iv. Should the case be conducted in phases?

No.

v. Proposed Discovery Plan. Completion of fact discovery.

Plaintiff:

In view of the vast amount of discovery conducted in the prior action, and the level of information provided in Parker's four volume certified claim, Plaintiff proposes that fact discovery be concluded by January 15, 2008.

Defendant:

The United States proposes that fact discovery be concluded no sooner than February 1, 2009.

The United States agrees that a large volume of documents were gathered during the earlier, related case, but the United States disagrees that the relevant discovery was conducted during the earlier case. The focus of the two cases is entirely different. For example, the relevant time frames and relevant chronologies are different. For another example, there was no claim for damages in the previous case.

The United States suggests that fact discovery should conclude 90 days after the conclusion of expert discovery -- because fact discovery in this case is impeded by uncertainty

regarding Parker's allegations. While substantial discovery may be conducted prior to expert discovery, the United States doubts that Parker's specific allegations will be completely articulated before the submission of its expert reports. Thus, the United States seeks to reserve a brief time for fact discovery following the submission of expert reports.

The United States proposes that all summary exhibits, and supporting documents, be exchanged by March 15, 2009. Assuming a trial date in July 2009, the United States proposes that the meeting of counsel, required by RCFC Appendix A, paragraph 13, be scheduled for April 30, 2009.

v. Expert Discovery.

Plaintiff:

Plaintiff proposes that Plaintiff's Rule 26(a)(2) disclosures regarding experts be due on November 1, 2007.

Plaintiff proposes that Defendant's Rule 26(a)(2) disclosures regarding experts be due on December 1, 2007.

Plaintiff proposes that all expert rebuttal reports shall be submitted by December 15, 2007.

Defendant:

The United States proposes that the party with the burden of proof regarding an issue shall disclose its testifying experts, the information required by RCFC 26(a)(2), and all expert reports by June 30, 2008.

The United States proposes that expert rebuttal reports be due by August 31, 2008.

The United States proposes that all expert discovery should be concluded by October 30, 2008.

vi. Limits of Depositions and Interrogatories

The parties agree that the limits of ten depositions and 25 interrogatories per party appear reasonable at this time.

**k. Are there special issues regarding electronic case management needs?**

The parties have not identified any special issues regarding electronic case management.

**l. Date of the early meeting of counsel pursuant to Appendix A ¶ 3? Is there other information of which the Court should be aware at this time?**

Counsel for each party conferred on June 11, 2007, and at various other times, including June 26, 2007 and July 18, 2007. The parties agree that initial disclosures pursuant to RCFC 26(a)(1) shall be served on or before September 10, 2007.

**m. Proposed Dates for Preliminary Status Conference**

The parties jointly propose the following dates for the preliminary status conference:

| | |
|---|---|
| Wednesday, August 1, 2007 | 11:00 a.m. |
| Friday, August 3, 2007 | 11:00 a.m. |
| Monday, August 6, 2007 | 11:00 a.m. |

Respectfully submitted,

__________s/________
Carter B. Reid, Esquire
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Tel: 703- 749-1000
Fax: 703-893-8029
creid@wthf.com
Counsel for Plaintiff

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

______s/_______
Bryant G. Snee
BRYANT G. SNEE
Deputy Director

______s/_______
James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tel: 202-616-0856
Fax: 202-514-7969
James.Poirier@usdoj.gov
Counsel for Defendant

Dated: July 23, 2007.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing document, Joint Preliminary Status Report, has been served upon all persons noted below by way of first-class mail, postage prepaid, or facsimile on the 23rd day of July, 2007. Additionally, I certify that this case being designated as an electronic case in the court's CM/ECF system, notice of electronic filing constitutes a certificate of service as to all parties to whom electronic notice is sent.

_______/s/__________

Carter B. Reid
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
E-mail: creid@wthf.com